Wilma J. GRANT, Plaintiff,

v.

ARA SERVICES, INC., et al., Defendants.

No. C–3–84–478.

United States District Court, S.D. Ohio, W.D.

Sept. 27, 1985.

Christine Lobas Magee, Miamisburg, Ohio, Deborah K. Badonsky, Dayton, Ohio, for plaintiff.

Jonas B. Katz, Cincinnati, Ohio, for defendant Union.

John A. Cumming, Dayton, Ohio, for defendant ARA Services.

Richard C. Brooks, Dayton, Ohio, for defendant Gwen Chenoweth.

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DOCS. # 29, 31, 34); TERMINATION ENTRY

RICE, District Judge.

This case comes before the Court for resolution of the Motions for Summary Judgment filed by the remaining Defendants in this case, Hotel Employees and Restaurant Employees Local 70, ARA Services, Inc., and Gwen Chenoweth (Docs. # 29, 31 and 34).

This case is brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiff Wilma J. Grant claims her employer, ARA Services, Inc., breached the collective bargaining agreement governing her employment in discharging her and that her Union, Hotel Employees and Restaurant Employees Local Union No. 70 ("the Union") breached its duty of fair representation in the handling of her grievance. Plaintiff also invokes the pendent jurisdiction of this Court for her claim against Defendant Chenoweth.

Even though Plaintiff has not exhausted her contractual remedies, she may be excused from this failure if she can show that the Union failed to fairly represent her in processing her grievance. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). The Union can be found to breach its duty of fair representation to a member when its conduct towards that person is arbitrary, discriminatory or in bad faith. *Poole v. Budd Company*, 706 F.2d 181, 183 (6th Cir.1983). If a union handles an employee grievance in a perfunctory manner, it can be held liable for breaching its duty of fair representation. *Poole,* 706 F.2d at 183; *Farmer v. ARA Services, Inc.,* 660 F.2d 1096 (6th Cir.1981). Mere negligence, however, is insufficient to establish a breach of the duty of fair representation. Gross mistake or inaction which has no rational explanation may, on the other hand, constitute a breach of the duty of fair representation. *Poole,* 706 F.2d at 184.

In exploring the type of union conduct which has been found to be arbitrary and thus a breach of the duty of fair representation, the Court notes that unexplained union action which substantially prejudices a member's grievance may be-

sufficiently arbitrary to be considered unfair representation. *Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1211 (6th Cir.1981). Arbitrariness may be found if the union accepts an employer's version of an employee's inability to work, and fails to investigate the employee's own claim that he is able to work. *Wyatt v. Interstate & Ocean Transport Company*, 623 F.2d 888, 891 (4th Cir.1980); *see Minnis v. International Union*, 531 F.2d 850, 853 & n. 5 (8th Cir.1975). A union's failure to properly investigate a grievance and to interview pertinent witnesses may be unfair representation. *Monroe v. International Union, UAW*, 540 F.Supp. 249, 254 (S.D.Ohio 1982), *aff'd*, 723 F.2d 22 (6th Cir.1983). Simply put, a Union must give a member the opportunity to participate in the grievance process. *Miller v. Gateway Transportation Co., Inc.*, 616 F.2d 272, 277 (7th Cir.1980). Plaintiff urges the Court, in her memorandum contra Defendant's Motions for Summary Judgment, that genuine issues of material fact exist as to whether the Union acted perfunctorily and arbitrarily in the handling of her grievance.

Plaintiff was discharged for dishonest conduct by her employer, Defendant ARA Services, Inc., on August 3, 1983. On August 2, 1983, Plaintiff's supervisor, Defendant Chenoweth, observed Plaintiff remove four five-dollar bills from her cash register at Monarch Marketing. A video tape recording of Plaintiff's conduct at her cash register was subsequently undertaken by means of hidden cameras. Defendant Chenoweth later found eleven dollars stuffed under the cash tray of Plaintiff's register. Defendant Chenoweth also charged that, as documented by the tape, Plaintiff had failed to ring up customers on her register after they paid her for their meals. Plaintiff was discharged the following morning, August 3, 1983.

With the assistance of Union personnel, Plaintiff filed a grievance to protest her discharge. The Union pursued said grievance through the various levels of grievance proceedings without obtaining Plaintiff's reinstatement. Plaintiff was asked whether she wanted to settle the grievance at that juncture or to try for reinstatement through arbitration. Before making that decision, Plaintiff went out of town, and did not contact the Union. Union representatives went ahead and submitted Plaintiff's case to their Executive Board to determine whether or not to pursue the grievance through arbitration. The Executive Board decided not to take Plaintiff's case to arbitration, and sent her a letter informing her of its decision.

The materials submitted by both Plaintiff and Defendants indicate to this Court that the Union adequately investigated Plaintiff's case and determined that her discharge did not warrant arbitration.

Plaintiff argues that the Union breached its duty of fair representation in the following ways:

(1) Failing or refusing to investigate charges against Plaintiff, including failure to interview witnesses;

(2) Failing or refusing to permit Plaintiff an opportunity to view and rebut the evidence against her;

(3) Failing or refusing to rebut inaccurate company evidence against Plaintiff; and

(4) Failing or refusing to recommend Plaintiff's grievance for arbitration.

(Doc. # 1 at ¶ 21).

Contrary to Plaintiff's assertions, Union representatives did not simply accept Plaintiff's employer's version of her discharge, as was the case in *Wyatt*, 623 F.2d at 891. Rather, they did conduct their own investigation, which included interviewing Plaintiff. Union representatives viewed the tape of Plaintiff's conduct on the day before her discharge. They asked and received permission to examine a cash register similar to that which Plaintiff had used in order to compare or verify allegations which had been made about the money found wedged behind the drawer of Plaintiff's cash register. Union representatives also examined cash register tapes and food production sheets to investigate the charge that the average check was

smaller when Plaintiff operated the cash register than when other employees performed the job.

At her initial grievance hearings, Plaintiff was unable to provide an explanation of her work performance on the date at issue, or to explain the missing five dollar bills or the money found folded behind her cash drawer. She also indicated that she could think of no witnesses who could contradict her supervisor's charges of dishonesty. Union representatives then requested that Plaintiff meet with them again. After some delay on Plaintiff's part, the meeting was held. The tape and the allegations of Plaintiff's former supervisor were again discussed with Plaintiff. Plaintiff continued to be unable to explain her conduct as seen on the video tape. The Union representatives asked Plaintiff once more for aid in finding witnesses or otherwise contesting her former employer's version on the date in question. Plaintiff was unable to provide any such assistance.

Plaintiff now contends that the Union failed to properly investigate her grievance, in that they did not allow her the opportunity to view the tape with them during the course of the grievance proceedings. Plaintiff also points to the Union's failure to interview those customers, shown on the tape, whose meal charges Plaintiff was alleged not to have rung up on August 2, 1983.[1] These contentions notwithstanding, the Court notes that the Union gave Plaintiff several opportunities to rebut her former supervisor's charges of dishonesty and Plaintiff failed or was unable to do so. As noted by the Court in *Haupt v. Michigan Bell Telephone Company*, 599 F.Supp. 265, 269 (E.D.Mich. 1984), it is difficult to fault the Union for not investigating further than they did when Plaintiff, who knew the most about

the circumstances of her work on August 2nd, could not and did not attempt to explain the inaccuracies which she believed to exist in the allegations of her dishonesty. Plaintiff now suggests that the Union should have interviewed the customers whom she served on that date, but Plaintiff apparently never mentioned this avenue of inquiry to the Union during the course of the grievance proceedings. With respect to the tape, Plaintiff's deposition, at best, reveals that she was doubtful that such a tape even existed, and that she would "like to see it if they had one." (Grant deposition, p. 71). The record provides no indication that Plaintiff demanded to see the tape and that Union representatives refused to let her see it or to prod Monarch personnel into allowing her to have access to it.[2]

The investigation of the Plaintiff's grievance by the Union may not have been perfect. Even, however, if the Union's judgment was flawed, in that they may have produced a meritorious argument or favorable witness had Plaintiff viewed the tape with them, the record conclusively demonstrates that the Union adequately evaluated and investigated Plaintiff's claim. As noted *supra*, an employee must show more than mere negligence or mistaken judgment to establish a breach of the duty of fair representation. The grievance process is not expected to be error-free, and courts must hesitate to interfere with legitimate internal union decisions which fairly evaluate whether a claim warrants resort to the arbitral machinery. *Poole*, 706 F.2d at 184. Plaintiff had been given a warning for unsatisfactory performance, which included being short of cash in her register without explanation, just prior to the date of her discharge. Plaintiff recalled receiving at least one other such warning in mid-1982. (Grant deposition at

---

1. To the extent that Plaintiff also claims that Union Representative Ruth Rhoden was hostile to her, the Court notes that Plaintiff's displeasure with Rhoden was based solely on a perception that "every grievance that was filed went for the company." (Grant deposition, p. 37). When questioned further, Plaintiff stated that she and Rhoden got along. Plaintiff could not articulate a reason why Rhoden might not have

advocated Plaintiff's position in the grievance procedure. *Id.*

2. The tape in question was in the possession of Monarch Marketing, which had contracted with Defendant ARA Services, Inc., for the services of Plaintiff.

pp. 6–7). The Union, having investigated, was unable to adequately explain Plaintiff's conduct on the date in question. Their conclusion that arbitration would not be fruitful had a rational basis and thus is not, without more, a breach of the duty of fair representation. *Vaca,* 386 U.S. at 191, 87 S.Ct. at 917; *Poole,* 706 F.2d at 184.

 For these reasons, the Motion for Summary Judgment filed by Defendant Hotel Employees and Restaurant Employees Local No. 70, is sustained (Doc. # 29). As a finding of a breach of the duty of fair representation is essential to Plaintiff's claim against her employer, Defendant ARA Services, Inc., is likewise entitled to summary judgment in its favor (Doc. # 31).

In the absence of a federal cause of action in this case, the Court declines to extend pendent jurisdiction to the claim of slander alleged by Plaintiff against Defendant Chenoweth, and Defendant Chenoweth's Motion for Summary Judgment is sustained on this basis. (Doc. # 34). *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Court believes that the Ohio Savings Statute, Ohio Rev.Code § 2305.19, will permit Plaintiff to maintain this claim in state court despite the fact that the one-year statute of limitations, Ohio Rev. Code § 2305.11, applicable to claims of slander has expired. *See Harris v. City of Canton,* 725 F.2d 371, 375 (6th Cir.1984); *Cero Realty Corp. v. American Manufacturers Mutual Ins. Co.,* 171 Ohio St. 82, 167 N.E.2d 774 (1960).

The Court believes the requirements for invocation of the Ohio Savings Statute to have been met in this case. Plaintiff's action was timely filed in this Court for purposes of the one-year limitation of Section 2305.11. *Cero,* 167 N.E.2d at 777. As for whether dismissal for lack of pendent jurisdiction is "otherwise than upon the merits," the Ohio Supreme Court's interpretation of that phrase indicates that the test is whether the dismissing court reached the substance of a plaintiff's claim. *Id.* A dismissal in federal court for lack of diversity has been held to have been "oth-

erwise than upon the merits" for purposes of a timely re-filing in state court pursuant to the Ohio Savings Statute. *Wasyk v. Trent,* 174 Ohio St. 525, 191 N.E.2d 58 (1963). Dismissal for lack of pendent jurisdiction likewise pays no heed to the merits of a claim, but rather reflects notions of comity and judicial economy. Thus, should Plaintiff so choose, her claim of slander would appear to be viable in state court for one year after the entry of judgment by this Court pursuant to Section 2305.19.

The instant case is hereby ordered terminated upon the docket records for the United States District Court for the Southern District of Ohio, Western Division at Dayton.