Norman PURNELL, Administrator of the Estate of Armstead Land, a/k/a Armstad Land, Plaintiff–Appellee,

v.

CITY OF AKRON, et al., Defendants,

v.

Damon CAMPBELL; Carissa Campbell, Appellants.

No. 89–3969.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1990.

Decided Feb. 13, 1991.

Edward L. Gilbert (argued), Akron, Ohio, for plaintiff-appellee.

Paul R. Reiners, Carol A. Costa (argued), Canton, Ohio, for appellants.

Before KENNEDY and MILBURN, Circuit Judges, and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

The appellants, Damon and Carissa Campbell, claim they are illegitimate offspring of Armstead Land and therefore entitled as a matter of right to intervene in a wrongful death action brought under Ohio law by the administrator of the estate of Mr. Land. The specific question raised on appeal is whether it was proper for the district judge to deny the petition to intervene without notice and without following through on his earlier determination to stay proceedings until there was a resolution of the paternity issue by the state court system of Ohio. The immediate issue is simply stated, but its resolution is considerably more complex and we are obliged to vacate the order appealed from and to remand for further proceedings.

## I.

At the time of his death, on February 17, 1988, Armstead Land was married to Barbara Land. He had fathered several children by her. The appellants, the Campbell children, claim they are illegitimate children fathered by Armstead Land with their mother, Evelyn Campbell. In April, 1988, the Campbell children, through their mother who had been appointed administrator of

Armstead Land's estate, filed this case in U.S. district court.

The original complaint contains two counts. The first count, a survival action based on the violation of decedent's constitutional rights by defendants, the city of Akron and four police officers, was brought under 42 U.S.C. § 1983. The prohibited conduct which led to Armstead Land's death, allegedly occurred in the process of arresting and restraining Armstead Land on or about February 17, 1988. The second count, asserting damages suffered by both the legitimate and illegitimate children as next of kin, was brought under the Ohio wrongful death statute, O.R.C. § 2125.01 et seq. No other jurisdictional facts were alleged. The district court therefore concluded that any jurisdiction over count two, the state wrongful death claim, was pendent to the federal question claim in count one.

In August, 1988, Barbara Land's motion to intervene was granted as to count two, the state wrongful death claim. Intervention by the Land family was not allowed as to count one because the district court found that any recovery obtained from the survival action under section 1983 would accrue to the estate of Mr. Land, rather than to his beneficiaries; consequently, it reasoned Mrs. Land's interest was adequately protected by the administrator already appointed, Evelyn Campbell. The Land Family was given fifteen days leave to amend its intervention complaint to conform to the court's order. The intervention complaint bases federal jurisdiction on 28 U.S.C. §§ 1331, 1332 and 1343, and asserts claims for damages under the Ohio survival and wrongful death statutes. In December, 1988, at the request of the Land family and in light of the competing interests between the legitimate and alleged illegitimate children of Armstead Land, the Ohio Summit County Probate Court replaced

Evelyn Campbell, as administrator, by appointing Norman Purnell. The district court then substituted Purnell as the successor to Evelyn Campbell.

To protect their interests through their own counsel, the Campbell family moved to intervene in the pending district court action in February of 1989. The district court held the motion in abeyance with the following language:

> At a hearing on this motion, this Court raised concern that the issue of whether the Campbell children are heirs must be resolved as soon as possible and before this case proceeds to trial. The correct forum for that determination, however, is the probate court. Therefore, this Court has directed Paul R. Reiners, attorney for the Campbell children, to seek a determination from the probate court without delay. Their Motion to Intervene will be held in abeyance until that determination is made.

In April, 1989, the Campbell children filed a complaint to determine heirship in the Ohio Summit County Probate Court. The district court abstained from ruling on the motion until October 19, 1989 when it denied intervention, as the probate court had not yet ruled on the heirship proceeding and this case was ready for trial.[1] From that order, which was certified as final under Rule 54(b), the Campbell children now appeal.

## II.

■ While we do not question that the district court had jurisdiction to consider the Campbells' motion to intervene, its order denying intervention only disposed of part of the case. Accordingly, we must initially determine whether we have jurisdiction to rule on the appeal. Section 1291 of Title 28 specifies that courts of appeals have jurisdiction only over "final decisions of the district courts...." *See also Liber-*

---

**1.** On September 5, 1990 the Ohio Supreme Court held in *Martin v. Davidson,* 53 Ohio St.3d 240, 559 N.E.2d 1348 (1990), that the probate division of an Ohio court of common pleas does not have jurisdiction to determine whether a child may present proof of paternity after the alleged father's death. Relying on this decision, the Summit County Probate Court dismissed the Campbells' complaint to determine heirship on September 11, 1990 for lack of jurisdiction. The Campbells have now filed a similar complaint to determine heirship with the Summit County Juvenile Court.

*ty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 1205, 47 L.Ed.2d 435 (1976) (When an interlocutory order is appealed, its "finality" must be raised *sua sponte* where the parties have not addressed that issue, as it is a jurisdictional prerequisite).

Judge Bell stated that his order denying intervention under Rule 24(a)(2) "constitute[d] a final judgment as to [the Campbells'] claim from which they may appeal pursuant to Federal Rule of Civil Procedure 54(b)." In its discretion, a district judge may use Rule 54(b) to certify an order for immediate appeal if it finally disposes of one or more but fewer than all of the claims for relief asserted, or completely determines the rights and liabilities of one or more but fewer than all of the parties. Rule 54(b), however, contains certain prerequisites. The rule allows the court to "direct the entry of a final judgment" in multiple claim or multiple party cases, the latter circumstance being present here, but *"only* upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." (emphasis added). Also, the district court must articulate the analysis guiding its certification; otherwise, any deference due the order is nullified. *Knafel v. Pepsi Cola Bottlers of Akron, Inc.,* 850 F.2d 1155, 1159 (6th Cir.1988).

Judge Bell made an express determination of finality in his order by stating that it "constitute[d] a final judgment." He did not, however, set forth his reasons for the certification or expressly conclude that there was no just reason for delay. Failure to comply with those requirements makes the order unappealable under Rule 54(b). *See Knafel,* 850 F.2d at 1159–60; *Corrosioneering, Inc. v. Thyssen Envtl.*

*Sys., Inc.,* 807 F.2d 1279, 1284–85 (6th Cir. 1988); *Solomon v. Aetna Life Ins. Co.,* 782 F.2d 58, 60–61 (6th Cir.1986).

Notwithstanding the lack of proper certification, compliance with Rule 54(b) is not always a prerequisite to judicial review of orders entered in suits involving multiple claims or multiple parties. The Campbell children originally moved the district court that they be granted the "right" to intervene pursuant to Rule 24(a)(2). It is fairly well established that *denial* of a motion to intervene as of right, *i.e.* one based on Rule 24(a)(2), is an appealable order.[2] *E.g., Sam Fox Publ. Co. v. United States,* 366 U.S. 683, 687–88, 81 S.Ct. 1309, 1312, 6 L.Ed.2d 604 (1961). The appealability of such orders developed independently and before the prerequisites for proper Rule 54(b) certification we noted earlier. *See Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 512–13, 70 S.Ct. 322, 324–25, 94 L.Ed. 299 (1950). *See also Huckeby v. Frozen Food Exp.,* 555 F.2d 542, 549 (5th Cir.1977) (citing *United States v. Allegheny–Ludlum Indus., Inc.,* 517 F.2d 826, 841 (5th Cir.1975) (the court agreed with appellant's argument that no Rule 54(b) certification is required to secure review of an order refusing leave to intervene)).

While case law in general does not clearly explain the basis for allowing interlocutory appeal of orders denying intervention, 6 *Moore's Federal Practice* § 54.38, at 242–43 n. 4 (1990), the Supreme Court in *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987), suggested that orders denying intervention in any respect fall within the potential reach of the *Cohen* doctrine, a judicially crafted exception to the finality doctrine.[3] The Court in *String-*

---

**2.** It is often stated by appellate courts that an order which denies intervention is always appealable if intervention was a matter of right; but if permissive intervention is sought, the order denying such intervention is appealable only if the court has abused its discretion. 3B *Moore's Federal Practice* ¶ 24.15, at 164–65 (2d ed. 1990) (citations omitted). However, that jurisdictional rule tends to be more theoretical than practical. In deciding whether a court has jurisdiction, it is forced to determine the merits of the question raised, *i.e.* whether intervention

was of right or invoked the sound discretion of the court. *See, e.g., Sam Fox Publ. Co. v. United States,* 366 U.S. 683, 687–88, 81 S.Ct. 1309, 1312, 6 L.Ed.2d 604 (1961).

**3.** In *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the district court waived a statutory requirement that shareholders in a derivative action holding small amounts of stock post a bond for potential expenses and attorney's fees that would be incurred if defendants prevailed. In holding

*fellow* faced the question of whether an order denying intervention as a matter of right but allowing for permissive intervention, albeit on a restrictive basis, was appealable as a collateral order under the *Cohen* doctrine. The Court found that in such a case the permissive intervenor remains a participant in the proceeding and is thereby able to obtain effective review of its claims on appeal after trial. Accordingly, it concluded that there should be no immediate review. *Id.* 480 U.S. at 375, 107 S.Ct. at 1182. The Court, however, noted that "when an order prevents a putative intervenor from becoming a party in *any* respect, the order is subject to immediate review." *Id.* at 377, 107 S.Ct. at 1183 (citing *Railroad Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 524–25, 67 S.Ct. 1387, 1390, 91 L.Ed. 1646 (1947)) (emphasis in original).

As in *Railroad Trainmen,* Judge Bell's October 19, 1989 order denied intervention by the Campbell children in all respects. We find that all elements of the *Cohen* test, as refined by *Coopers & Lybrand v. Livesay, supra* note 3, were met. The order conclusively determines the disputed question. It also resolves an important issue completely separate from the merits of the action, since the right to participation by the Campbell children in this lawsuit is unrelated to their cause of action for wrongful death. Also, based on *Stringfellow,* the order is of the type which is effectively unreviewable on appeal from a final judgment because the Campbell chil-

dren are presently not a party to the case awaiting trial. *See also Dickinson,* 338 U.S. at 507, 70 S.Ct. at 322 ("[T]he lawsuit is all over so far as the [excluded] intervenor is concerned."). We therefore conclude that the order denying intervention by the Campbell children is appealable.

### III.

### A. Intervention as a Matter of Right

█ The district court's denial of a party's motion to intervene as a matter of right is reviewed *de novo. Jansen v. City of Cincinnati,* 904 F.2d 336 (6th Cir.1990); *Grubbs v. Norris,* 870 F.2d 343 (6th Cir. 1989). Rule 24(a)(2)[4] has been interpreted as providing a three-pronged test for determining an individual's right to intervene: (1) does the applicant claim an interest relating to the property or transaction that is the subject of the action; (2) is the applicant so situated that disposition of the lawsuit may as a practical matter impair or impede his ability to protect that interest; and (3) is the applicant's interest adequately represented by existing parties. *Meyer Goldberg, Inc. of Lorain v. Goldberg,* 717 F.2d 290, 292 (6th Cir.1983).

### 1. Whether the Campbell children claim an interest relating to the property or transaction that is the subject of the action

Whether the Campbell children claim an interest relating to the property or transaction that is the subject of this action de-

---

the order appealable, the Supreme Court emphasized the order's finality as a practical matter:

> This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

*Id.* at 546, 69 S.Ct. at 1226. The Court in *Stringfellow* applied the *Cohen* doctrine as set forth in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978):

> To qualify as a collateral order, a decision must: (1) "conclusively determine the disputed question"; (ii) "resolve an important issue completely separate from the merits of

the action"; and (iii) "be effectively unreviewable on appeal from a final judgment."

*Stringfellow,* 480 U.S. at 375, 107 S.Ct. at 1182 (quoting *Coopers,* 437 U.S. at 468, 98 S.Ct. at 2457).

4. Rule 24(a)(2) states:

> (a) *INTERVENTION OF RIGHT.* Upon timely application anyone shall be permitted to intervene in an action:
>
> (2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

pends in large part on the right of an illegitimate child to sue for the wrongful death of his or her biological father. If illegitimate children have no such rights, then the Campbell children would have no basis to intervene under Rule 24(a)(2).

In *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), the U.S. Supreme Court held that it was a denial of equal protection to bar illegitimate children a right of recovery for the death of their *mother* under a state wrongful death statute. The Court found such discrimination against the illegitimate children "invidious," as "no action, conduct, or demeanor of theirs is possibly relevant to the harm done the mother." *Id.* at 72, 88 S.Ct. at 1511. Although no Supreme Court case has spoken to the question of wrongful death recovery by illegitimate children for the death of their *father*, the Court has recognized the right of a dependent, unacknowledged illegitimate child to recover benefits under a state's workmen's compensation act for the death of his father. *See Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). In addition, the Court has held that an illegitimate child retains a judicially enforceable right under the equal protection clause to support from his father when this right is granted to legitimate children. *See Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973).

Since *Levy*, Ohio courts have addressed the question, albeit sparsely, of wrongful death recovery by illegitimate children of a deceased father. *See Hopping v. Erie Ins. Co.*, 1990 WL 31832 1990 Ohio App. LEXIS 1043 (1990) (recognizing that Ohio may not deny an illegitimate child's cause of action for the wrongful death of his or her father merely because of the illegitimacy). *See also Cannon v. Transamerican Freight Lines*, 37 Mich.App. 313, 194 N.W.2d 736 (1971) (in applying Ohio law the Michigan court of appeals held that the denial of an illegitimate child's cause of action for the wrongful death of his or her father, merely because of the illegitimacy, violated the fourteenth amendment). In light of *Levy, supra,* its progeny and Ohio case law, we conclude that Ohio courts would most likely hold that the Campbell children have a cause of action for the wrongful death of Armstead Land, assuming he is their biological father.

Standing to assert such a right, however, may be restricted by state law to circumstances where paternity has been proved. *See Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978) (Supreme Court upheld the constitutionality of a New York statute which allowed illegitimate children to inherit from their father only if a court of competent jurisdiction, during the father's lifetime, had entered an order declaring the child's paternity). As long as state law provides some means by which an illegitimate child can prove paternity and thus gain an inheritance and those means are not used as an impenetrable barrier that works to shield otherwise invidious discrimination, such a state regulation(s) would probably pass constitutional muster. *See generally Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).

In Ohio paternity may be established a number of different ways. The father may designate the child as his heir-at-law. O.R.C. § 2105.15. He may acknowledge paternity with the probate court. O.R.C. § 2105.18. He may adopt or provide for the illegitimate child in his will, *Moore v. Dague*, 46 Ohio App.2d 75, 345 N.E.2d 449, 452 (1975). The Campbells have not attempted to prove paternity by any of these means. However, they advance in support of their factual claim of biological paternity an affidavit allegedly executed by the decedent while living, for the purpose of proving paternity.

Alternatively in Ohio, parentage is presumed when the biological father and the child's mother, after the child's birth, married or attempted to marry each other by a marriage solemnized in apparent compliance with the law of the state in which the marriage took place, *and* the father has acknowledged his paternity of the child in a writing sworn to before a notary public. O.R.C. § 3111.03(A)(3)(a). While Armstead Land allegedly acknowledged his paternity in an affidavit in 1977, the Campbell children do not argue, however, that Armstead

Land at any time married or tried to marry Evelyn Campbell.

Ohio law also allows paternity to be proved by genetic tests. O.R.C. § 3111.09; *Hamilton County Dept. of Human Serv. v. Ball*, 36 Ohio App.3d 89, 521 N.E.2d 462, 463 (1986). In *Alexander v. Alexander*, 42 Ohio Misc.2d 30, 537 N.E.2d 1310 (1988), the probate court held that a court order requiring disinterment to prove paternity by genetic testing could be issued when necessary.[5] Apparently the Campbell children learned that the Smith County Coroner possessed tissue or blood samples of Armstead Land sufficient for genetic testing. They therefore filed a motion in December, 1989, to inspect or test Mr. Land's tissue or blood. That motion, however, was eventually withdrawn. The Campbell children then asserted they "were unable to make the additional expenditures necessary to complete the DNA testing." The Campbell children could have plead that they were indigent and, if they had so qualified, the state would have been required to prepay the cost of the genetic tests. *See* O.R.C. § 3111.09; *Edwards v. Porter*, 8 Ohio App.3d 277, 456 N.E.2d 1347, 1348 (1983). Instead, they asked the probate court to set the matter for an evidentiary hearing. Witnesses testified for the Campbell children, and Mr. Land's affidavit was presented to the court.

As we had noted earlier, the probate court's decision was still pending when the Ohio Supreme Court in *Martin v. Davidson* required the Campbell children to refile for a paternity determination in the Summit County Juvenile Court. Thus to date, approximately two and one half years after the initial complaint was filed, no paternity determination has been made. At least on the record, there is no clear indication that the Campbells have been dilatory in pursuing a paternity determination as counsel for defendants admitted as much in his brief. Moreover, there is no question that if paternity were proved the Campbell children would have "an interest related to the transaction which is the subject of this action."

With the foregoing material as background, we initially point out that there is no clear definition of what constitutes a litigable "interest" for purposes of intervention under Rule 24(a)(2). *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987); C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1908, at 263 (1986). The Supreme Court has noted that "[w]hat is obviously meant [by Rule 24(a)(2) ] is a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 532, 91 S.Ct. 534, 543, 27 L.Ed.2d 580 (1971). Similarly, this Court has required a "direct, substantial interest" in the litigation which must be "significantly protectable." *Jansen*, 904 F.2d at 341; *Grubbs*, 870 F.2d at 346; *Meyer Goldberg, Inc.*, 717 F.2d at 292; *Brewer v. Republic Steel Corp.*, 513 F.2d 1222, 1223 (6th Cir. 1975).

However, as with the word "interest," the terms "direct, substantial" and "significantly, protectable" are not well defined. Wright, Miller & Kane, § 1908, at 270. Although the Campbells have a legally protectable interest related to the transaction at issue if they are in fact Mr. Land's children, that interest may be classified as indirect or contingent *until* paternity is proved. The same classification may be made of numerous other interests asserted in motions to intervene, the contingency of which is to be resolved by a court prior to ruling on the motion. In *LoPiccolo v. Second Injury Fund*, 826 F.2d 1539 (6th Cir. 1987), for example, we noted that if the 1984 amendment to Michigan worker's compensation laws applied to that dispute, the Fund had an interest for purposes of Rule 24(a)(2); we then proceeded to deter-

**5.** It is not clear whether this case is still good law after *Martin v. Davidson, supra* (see note 1). Apparently no other Ohio case addresses the issue of disinterment to resolve a paternity determination. However, the Ohio legislature has given wide discretion to Ohio courts in the type of evidence that can be used to prove paternity. *See* O.R.C. § 3111.10 (In addition to evidence such as genetic testing and an expert's opinion concerning the statistical probability of the alleged father's paternity, "[a]ll other evidence relevant to the issue of paternity of the child" is admissible.).

mine the nature of the Fund's interest and found that intervention should have been allowed. *Id.* at 1541. Moreover, several courts have, implicitly at least, rejected the notion that Rule 24(a)(2) requires a specific legal or equitable interest. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 132–36, 87 S.Ct. 932, 935–37, 17 L.Ed.2d 814 (1967); *Johnson v. San Francisco Unified School Dist.,* 500 F.2d 349, 352–53 (9th Cir.1974); *Rios v. Enterprise Ass'n Steamfitters Loc. U. No. 638,* 520 F.2d 352, 357 (2d Cir.1975); *Hatton v. County Bd. of Educ.,* 422 F.2d 457, 461 (6th Cir.1970) ("Although the interest claimed is of a general *and indefinite character,* it would seem to the Court to be sufficient to permit intervention under ... *Cascade*" which suggests "that the term 'interest' in the amended Rule 24(a) should be construed liberally.").

■ Contrary to Appellee Purnell's argument, a party seeking to intervene need not possess the standing necessary to initiate a lawsuit. *Trbovich v. United Mine Workers,* 404 U.S. 528, 536–39, 92 S.Ct. 630, 635–36, 30 L.Ed.2d 686 (1972). *See also United States Postal Serv. v. Brennan,* 579 F.2d 188, 190 (2nd Cir.1978) (the existence of a case or controversy having been established as between plaintiff and defendant, there was no need to impose a standing requirement on the would-be intervenor). Rule 24(a)(2) uses the words "may have" in describing the type of interest that qualifies for intervention. The Campbells may ultimately have no standing once the paternity determination is made, but at this point that remains an open question. *Cf. Dotson v. David Int'l Corp.,* 514 F.Supp. 109, 110 (E.D.Tenn.1981) (the

district court held that resolving the paternity issue in a wrongful death action was a prerequisite to ruling on the motion to intervene). Accordingly, we conclude that the Campbell children claim a sufficient interest for intervention as a matter of right.

*2. Extent to Which Denial of Appellant's Motion to Intervene as of Right Impairs its Ability to Protect its Interest*

■ To intervene as a matter of right, the Campbells must also show that an unfavorable disposition of the action may impair their ability to protect their interest in the litigation. The applicants, however, need not show that substantial impairment of their interest will result, *Nuesse v. Camp,* 385 F.2d 694, 701–02 (D.C.Cir.1967), nor, from the language of Rule 24(a), that impairment will inevitably ensue from an unfavorable disposition; the would-be intervenors need only show that the disposition "*may* ... impair or impede [their] ability to protect [their] interest." Fed.R.Civ.P. 24(a)(2) (emphasis added).

■ The administrator urges that there is no impairment of interest by denying intervention because the true beneficiary of this action is the estate of Armstead Land. He is correct with regard to the survival action in count one of the complaint. We interpret count one as seeking damages only for a violation of *Mr. Land's* constitutional rights, specifically *his* first, fourth and fourteenth amendment rights. The Land and Campbell motions to intervene, the amended intervention complaint, and the briefs filed with this court do not suggest otherwise.[6] However, as far as count

---

**6.** Accordingly, we do not address the merits of the difficult question of whether the children of Mr. Land, either the legitimate or allegedly illegitimate ones, could state a claim for damages under section 1983 based on the killing of their father. We recognize that a number of circuit courts have concluded that a decedent's immediate family may bring a section 1983 claim for deprivation of the parent-child relationship in the wrongful death context. *See, e.g., Smith v. City of Fontana,* 818 F.2d 1411, 1417–20 (9th Cir.1987) (children may bring section 1983 action under due process clause for deprivation of father's companionship where police officers

killed father during his arrest); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1242–48 (7th Cir. 1984) (father, but not siblings, may recover in section 1983 action under due process clause where police officers shot and killed his son); *Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 509 n. 7 (3d Cir.1985) (adopting general holding of *Bell, supra* ). The legislative history of section 1983's precursor, the Ku Klux Klan Act of 1871, provides support for these cases. Representative Butler described the Act of 1871 "as a remedy for wrongs, arsons and murders done. This is what we offer to a man whose house has been burned, as a remedy; to a wom-

two is concerned, recovery under Ohio law for wrongful death depends on each beneficiary's circumstances. In Ohio, a wrongful death action is brought

> in the name of the personal representative of the decedent, [in this case Appellee Purnell,] for the exclusive benefit of the surviving spouse, children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent.

O.R.C. § 2125.02(A)(1). The statute further provides that compensatory damages may be awarded for the loss of support from the expected capacity of the decedent, loss of services and society of the decedent, loss of prospective inheritance, and mental anguish incurred by the surviving spouse, minor children, parents and next of kin. O.R.C. § 2125.02(B)(1)–(5). As the provision dealing with the distribution of proceeds expressly demonstrates, recovery will vary according to the unique circumstances of each beneficiary. *See* O.R.C. § 2125.03.

Admittedly, if we affirmed the lower court's denial of intervention, the Campbell children may not be entirely without recourse. We recognize that Ohio law normally requires the court which appointed the administrator to distribute the proceeds recovered in a wrongful death action. O.R.C. § 2125.03(A). *See also* O.R.C. § 2125.02(C) (a personal representative, with the consent of the court which appointed him, may at any time before or after trial has begun on a wrongful death claim settle with the defendant(s)). Appellee Purnell was appointed by the Ohio Summit County Probate Court. Assuming the Campbells eventually proved paternity and so notified the administrator, they may be able to intervene in the probate court's distribution of the proceeds recovered in district court. Alternatively, the Campbells could successfully sue the administra-

tor for breach of fiduciary duty if he had already distributed the proceeds. *See Rengel v. Sparks,* 1990 WL 163917 1990 Ohio App. LEXIS 4592. However, even assuming they are viable, such options, for obvious reasons, do not provide adequate protection. If the Campbells are not allowed to intervene in district court, the amount of proceeds will have been limited to the proof presented by the Land family; yet the proceeds would have to be shared by both the Lands and the Campbells. On the other hand, if the administrator has already distributed the proceeds he may not be worth suing.

Simply put, if there is a judgment for the Land family against defendants and the Campbells are successful in establishing paternity, then their joinder is necessary in the action where the beneficiaries present proof of damages so that the adjudication of the proceeds of such judgment will be just. *See Dotson,* 514 F.Supp. at 110 (citing to Notes of Advisory Committee on Rule 24, which states that under Rule 24 an applicant is entitled to intervene in an action when his or her interest is comparable to that of a person under Rule 19(a)(2)(i)). Accordingly, we believe that the Campbell family is so situated that disposition of its interest *may as a practical matter* impede its ability to protect that interest.

*3. Adequacy of Representation by Existing Parties*

■ The Campbell family's right to intervene also depends on whether its collective interest is adequately protected by the existing administrator. The proposed intervenors bear the burden of demonstrating inadequate representation. *Meyer Goldberg, Inc.,* 717 F.2d at 293. Some of the factors to be considered in determining whether representation is adequate are stated in *Triax Co. v. TRW, Inc.,* 724 F.2d 1224 at 1227–28 (6th Cir.1984): (1) if there is collusion between the representative and an opposing party; (2) if the representative

---

an whose husband has been murdered, as a remedy; *to the children whose father has been killed, as a remedy."* Cong. Globe, 42d Cong., 1st Sess. 807 (1871) (emphasis added). In this Court we have held, however, that section 1983

provides a cause of action which is *personal* to the injured party. *See, e.g., Jaco v. Bloechle,* 739 F.2d 239, 241 (6th Cir.1984) ("By its own terminology, the statute grants the cause of action 'to the party injured.' ").

fails in the fulfillment of his duty; and (3) if the representative has an interest adverse to the proposed intervenor. It is the last factor that must be considered in this case. The burden placed on the would-be intervenor requires "overcom[ing] the presumption of adequacy of representation that arises when the proposed intervenor and a party to the suit ... have the same ultimate objective." *Bradley*, 828 F.2d at 1192 (citation omitted).

■ Appellee Purnell argues that the interests of the present representative and the proposed intervenor are identical as both would want to obtain a maximum recovery for the benefit of the *estate*. His representation, Purnell argues, is therefore adequate. *See Blanchard v. Johnson*, 532 F.2d 1074, 1077 (6th Cir.1976). But again, Appellee misperceives the object of the Campbells' motion. They wish to sue, through their personal representative, for *personal* recovery. The Campbells concede that the administrator will adequately represent their interests in the section 1983 action. As noted elsewhere, however, the interests of the Lands and the Campbells are not identical under the Ohio wrongful death statute. Although the children of both families are suing to recover the same type of damages, the amount of damages will differ for each child. Accordingly, the two sets of children are in competition in the sense that both want full recovery from what may be limited damages.

"[I]nterests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Jansen*, 904 F.2d at 343 (citation omitted). As evidenced by his opposition to the Campbells' motion to intervene,[7] administrator Purnell has no interest in representing the would-be intervenors until paternity is proved, and though appearing neutral, he could be considered their opponent. *Cf. Smith v. Clark Sherwood Oil Field Contractors,*

457 F.2d 1339, 1344 (5th Cir.1972) (the court failed to see how one representative could adequately pursue and settle claims, on behalf of both legitimate and illegitimate dependents, which had the potential of becoming mutually exclusive of one another). Moreover, it is well established that "[i]f the interest of the absent party is not represented at all," which will be the case here if we affirm the denial of intervention, "then she or he is not adequately represented." *Grubbs*, 870 F.2d at 347 (citing Wright, Miller & Kane § 1909, at 318).

We find that intervention of right is appropriate in these circumstances. Rule 24 is broadly construed in favor of potential intervenors. *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir.1986); *Jansen*, 904 F.2d at 340 ("The need to settle claims among a disparate group of affected persons militates in favor of intervention."); Advisory Committee Note to Rule 24(a)(2) ("[I]f an [applicant] would be substantially affected in a practical sense by the determination made in an action, [the applicant] should, as a general rule, be entitled to intervene...."). Appellants' circumstances, in our opinion, adequately satisfy the requirements of Rule 24(a)(2) and therefore justify holding in abeyance the motion to intervene until the paternity issue is resolved, one way or the other.

### B. Permissive Intervention

■ Even if intervention as a matter of right is not appropriate in this case, we believe that rather than dismissing the case outright the district court should have granted permissive intervention contingent on the resolution of the paternity issue. Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely, *NAACP v. New York*, 413 U.S. 345, 365–66, 93 S.Ct. 2591, 2602–03, 37 L.Ed.2d 648 (1973), and if the "applicant's claim or defense and the main action have a question of law or fact in common." Fed.

---

**7.** According to the Campbells, the present administrator previously argued that (1) Evelyn Campbell was not competent to act as administrator of the decedent's estate due to competing interests with him and (2) the legitimate children were entitled to intervene because their

interests would not be adequately protected by the Campbells. If, as appellee suggests, all interests in the outcome of this action were the same, there would not have been the need for the lengthy disputes that have taken place here.

R.Civ.P. 24(b)(2).[8] The denial of permissive intervention should be reversed only for clear abuse of discretion by the trial judge. *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159 at 161 (6th Cir.1987).

Purnell correctly argues that the district court, in exercising its discretion, must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *Bradley*, 828 F.2d at 1193–94 (citing Rule 24(b)). Aside from the irony that the Campbells were the "original" parties to this action, there was no preservation of judicial economy by holding their motion to intervene in abeyance for a year and a half and then overruling it *sua sponte*. Of course, the present contingency of the Campbells' interest complicates the issue of whether there was an abuse of discretion. We nevertheless agree with appellants that the district court's denial of intervention, taken without giving advance notice to the Campbell children and against a prior order, has prejudiced their rights while providing no compelling benefit to the interests of the trial court or other parties.

Although to our knowledge there is no direct authority on the specific issue presented for review, by analogy Sixth Circuit case law in other contexts supports a finding that the district court abused its discretion here. In *Routman v. Automatic Data Processing*, 873 F.2d 970 (6th Cir. 1989), this circuit held that the district court abused its discretion when it granted summary judgment *sua sponte* against a plaintiff on an issue which the plaintiff was precluded from briefing and obtaining discovery by order of the court. We reasoned that the district court's summary disposition of the case was highly prejudicial to the plaintiff's pre-argument preparation and court presentation. *Id.* at 972. In reversing, we relied on a Seventh Circuit case in which a district court's grant of summary judgment was reversed because

the trial judge had violated his own pretrial timetable. *Id.* at 971–72 (citing *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 111 (7th Cir.1983)). *Cf. Ellison v. Ford Motor Co.*, 847 F.2d 297 (6th Cir.1988) (abuse of discretion to grant summary judgment without considering plaintiff's pending motion to amend the complaint, where plaintiff had been granted permission by the district court to file such a motion).

Appellee argues that it is incorrect to rely on case law concerning motions for summary judgment when dealing with motions for intervention because the former, if granted, results in a dismissal of a claim or the entire case. However, as is the case here, the latter may also result in a dismissal of claims. Granted, under Rule 56(c) a district court must give ten days to an adverse party to respond to a summary judgment entered against it, whereas there is no such procedural requirement when dealing with the denial of motions to intervene. Nonetheless, we fail to see any substantively significant distinction in the previously cited cases which would undermine their aid in determining whether permissive intervention should have been conditionally granted here. Those cases demonstrate that a district court commits an abuse of discretion when a violation or disregard of its own order(s) causes prejudice to one of the parties. We have already emphasized, in discussing intervention as a matter of right, the prejudice to the Campbells caused by the district court's denial of their motion to intervene. Had notice been given to the Campbells prior to the denial of their motion to intervene, those facts might have suggested a different outcome insofar as permissive intervention is concerned.

## IV.

On remand, the paternity issue will need to be resolved before the district court can

---

8. The Campbells only moved for intervention as a matter of right, but the district court could have considered whether permissive intervention was appropriate—especially since the Campbells limited the analysis in their appellate briefs to permissive intervention. *Cf. Penick v.*

*Columbus Educ. Ass'n*, 574 F.2d 889, 890 (6th Cir.1978) (per curiam) (district court did not improperly treat would-be intervenor's application for intervention under Rule 24(a)(2) as a matter of permissive intervention rather than intervention of right).

adjudicate the interest of each of the Campbell children. We view it as unfortunate that there has been such a delay as to the question of whether either one, both or none of the Campbell children were fathered by Mr. Land. This question could be speedily and determinatively resolved by DNA testing. At this juncture, however, we are unable to fault the Campbells for the delay.

Although plaintiffs have alleged a section 1983 cause of action, the paternity determination is uniquely confined to the state cause of action for wrongful death, as Judge Bell so aptly recognized. We thus have a pendent case wagging the federal judicial tail in an area where federal courts have traditionally, at least in diversity cases, given great deference to state courts. *See, e.g., Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981) (federal courts have invoked the so-called "domestic relations" exception to refuse or abstain from exercise of federal jurisdiction in certain diversity cases presenting intrafamily disputes); *Gray v. Richardson*, 474 F.2d 1370, 1373 (6th Cir. 1973) (same); *Kirby v. Mellenger*, 830 F.2d 176, 177–78 (11th Cir.1987) (paternity determinations fall within domestic relations exception); *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir.1978) (same); *Buechold v. Ortiz*, 401 F.2d 371, 373 (9th Cir.1968) (same). *See also In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States.").

Deference is no less deserved in a pendent jurisdiction case of this type, especially where a paternity determination has already been filed in the proper state court and the case as a whole is ready for trial. These circumstances are far more important than consideration of any raw judicial power federal courts may possess under their pendent jurisdiction to resolve paternity determinations or other similar intrafamily disputes.[9] We therefore think that the district court should be loath to intervene with regard to the paternity determination unless absolutely compelled to do so. Accordingly, we remand this case with the following instructions as to how to dispose of it.

After a reasonable opportunity to be heard is accorded to both the present parties and the would-be intervenors, if the district court is unable to ascertain that a resolution of the paternity determination can be obtained within a reasonable time it shall proceed on the federal claim over which it has unquestioned jurisdiction.[10] With regard to the state claims, it shall retain jurisdiction but stay its hand in the proceedings of those claims until such time as there has been an adequate resolution, one way or the other, of the paternity issue in the Ohio Summit County Juvenile Court. Alternatively, should it feel so inclined under the balancing test of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966),[11] and after making sure the parties would not thereby be prejudiced, the district court may dismiss the state claims, without prejudice, leaving the parties free to commence their wrongful death actions in state court.[12]

> [i]t has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in consideration of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims.... *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

**9.** We recognize that "the domestic relations exception has been narrowly confined," *CSIBI v. Fustos*, 670 F.2d 134, 137 (9th Cir.1982), and its use appears to be limited to diversity cases. *Id.* at 136. Nevertheless, we feel that the district court should abstain from deciding an intrafamily issue which has already been separated from the main case and is presently pending in state court.

**10.** Under the circumstances, we see nothing to preclude the district court, if it otherwise deems it proper, from certifying the finality of any partial judgment entered upon the verdict of the first count under Rule 54(b).

**11.** In *Gibbs*, the Supreme Court stated:

**12.** Although the intervention complaint filed by the Land family also asserted diversity jurisdiction as an alternate basis for jurisdiction, the state claims fall only within the scope of pendent jurisdiction. The intervention complaint stated that the amount in controversy was greater than $10,000.00, exclusive of interest and

With regard to the last option, that of dismissing the state claims, we note that the Ohio statute of limitations for wrongful death actions has now run, *see* O.R.C. § 2125.02(D), as more than two years have passed since the death of Mr. Land on February 17, 1988. Moreover, "[i]t is settled law that conditions that may ordinarily toll pure statutes of limitations have no effect upon special statutory limitations qualifying a given right, such as the limitation imposed by R.C. 2125.02(D)." *Ritz v. Brown*, 1989 WL 17287 1989 Ohio App. LEXIS 706. *See also Sabol v. Pekoc*, 148 Ohio St. 545, 76 N.E.2d 84 (1947) (two year limitation for wrongful death actions determines existence of the right, rather than being a limitation on the remedy).

However, it appears that the Ohio wrongful death savings and the general savings statutes, *see* O.R.C. §§ 2125.04; 2305.19,[13] would apply to this case and thus allow the parties to refile their state claims in state court. The wrongful death savings clause requires that the original action be commenced within two years after the decedent's death, which was the case here. Both section 2125.04 and 2305.19 also require that "a judgment for the plaintiff [be] reversed" or that "the plaintiff *fails*

otherwise than upon the merits." (emphasis added). The Ohio Supreme Court has held that a dismissal, for lack of diversity jurisdiction, of an action by a federal court located in Ohio qualifies as a failure of the action otherwise than upon the merits. *Wasyk v. Trent*, 174 Ohio St. 525, 191 N.E.2d 58 (1963). "Dismissal for lack of pendent jurisdiction likewise pays no heed to the merits of a claim, but rather reflects notions of comity and judicial economy." *Grant v. ARA Serv., Inc.*, 626 F.Supp. 66, 71 (S.D.Ohio 1985). The district court in *Grant* believed that the Ohio Supreme Court would interpret Ohio survival statutes as also applying to actions dismissed for lack of pendent jurisdiction, even though such action is discretionary. *Id.* Likewise, this court has previously dismissed pendent state claims when all federal claims have been dismissed or litigated to completion, based upon the notion that O.R.C. § 2305.19 would allow the parties to refile the state claims in state court. *See Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 804 (6th Cir.1990); *Knafel v. Pepsi–Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1483 (6th Cir.1990). We believe that O.R.C. §§ 2125.04 and 2305.19 would apply to this case and thus give the parties one

costs. The caption of the amended complaint listed a postal box address in Alabama for each member of the family and an employment address in Ohio for each of the defendants. Even assuming sufficient jurisdictional facts were alleged to invoke 28 U.S.C. § 1332 jurisdiction, the citizenship of the Land family is irrelevant where they are represented by another party. Diversity jurisdiction depends only upon the personal citizenship of the parties to the record, whether they be administrators, executors, trustees, etc. or non-representative parties. *E.g., Gross v. Hougland*, 712 F.2d 1034, 1037 (6th Cir.1983); *Deposit Guaranty Bank & Trust Co. v. Burton*, 380 F.2d 346, 348 (6th Cir.1967). Based on the record, both the original administrator, Evelyn Campbell, and the substituted administrator, Norman Purnell, are residents of Ohio. Therefore, there is no diversity jurisdiction in this case.

**13.** Section 2125.04 provides in relevant part:

In every action for wrongful death commenced ... within the time specified by section 2125.02 of the Revised Code, if a judgment for the plaintiff is reversed or if the

plaintiff fails otherwise than upon the merits, and the time limited by such section for the commencement of such action has expired at the date of such reversal or failure, the plaintiff ... may commence a new action within one year after such date.

Section 2305.19 provides in relevant part:

In an action commenced ..., if in due time a judgment for the plaintiff is reversed, or if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal of failure has expired, the plaintiff ... may commence a new action within one year after such date.

There is no legal distinction between these two statutes. As one court has stated:

Plaintiff's counsel will observe that otherwise than the reference to 2125.02, 2125.04 R.C., the Wrongful Death statute savings clause, and the first sentence of 2305.19 R.C., the general savings clause, are identical word for word. It is impossible to apply one rule of construction to one statute and a different rule of construction to the other.

*Bronikowski v. Bigham*, 143 N.E.2d 490 (Ohio Ct. Common Pleas 1955).

year in which to refile, *see id.*, if Judge Bell decided in the interests of comity and judicial economy to dismiss the state claims. As stated in the syllabus of *Cero Realty Corp. v. American Mfr. Mutual Ins. Co.*, 171 Ohio St. 82, 167 N.E.2d 774 (1960): "Section 2305.19 ... is a remedial statute and is to be given a liberal construction to permit the decision of cases upon their merits rather than upon mere technicalities of procedure."

## V.

In summary, we conclude that the Campbells claim a sufficient interest to justify holding the motion for intervention in abeyance until the paternity issue is resolved. Moreover, given the facts of the case we believe it was an abuse of discretion not to have granted permissive intervention contingent upon resolution of the paternity determination. While the district court is encouraged to reach the merits of the federal claim, it may either stay proceedings on the state claims until the paternity determination has been resolved or it may altogether dismiss without prejudice those pendent claims.

Accordingly, we VACATE the order denying intervention and REMAND the case to the district court for further proceedings consistent with this opinion.