**UNITED STATES OF AMERICA ex rel. Theresa BURR, Plaintiff,**

**v.**

**BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., a Florida Corporation, Defendant.**

No. 91–134–Civ–J–16.

United States District Court, M.D. Florida, Jacksonville Division.

Jan. 12, 1994.

Brian M. Kane, Asst. U.S. Atty., Jacksonville, FL, Michael C. Theis, U.S. Dept. of Justice, Civ. Div., Washington, DC, for U.S.

William George Cooper, Tracy K. Arthur, Coker, Myers, Schickel, Cooper & Sorenson, P.A., Jacksonville, FL, Dennis Abrams, David Bergers, Lowenthal & Abrams, Bala Cynwyd, PA, for Theresa Burr.

John R. McNatt, Jr., Jacksonville, FL, Dan H. Willoughby, Jr., Charles M. Shaffer, Jr., King & Spalding, Atlanta, GA, for defendant.

Tracy E. Tomlin, George Hartz, Coral Gables, FL, for Herbert Cooper.

## ORDER

SNYDER, United States Magistrate Judge.

This cause is before the Court on Herbert Cooper's Motion for Intervention (Doc. # 68), filed on August 19, 1993. All current parties to this action oppose the Motion for Intervention. *See* Relator's Opposition to Motion for Intervention (Doc. # 74), filed on September 1, 1993; United States' Citation of Authority in Opposition to Motion of Herbert Cooper to Intervene (Doc. # 75), filed on September 7, 1993 (hereinafter United States' Opposition); Blue Cross and Blue Shield of Florida, Inc.'s Brief in Opposition to Herbert Cooper's Motion for Intervention (Doc. # 76), filed on September 7, 1993. A hearing was held on the Motion for Intervention on January 5, 1994.

### Background

On February 19, 1991, Relator Theresa Burr filed suit under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (hereinafter FCA), alleging, in part, that the Defendant, Blue Cross and Blue Shield of Florida, Inc. (hereinafter BCBSF), in its capacity as Florida carrier for the Medicare Part B Program under title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, submitted false claims to the United States Department of Health and Human Services in violation of the FCA. The United States elected to intervene in the action pursuant to 31 U.S.C. § 3730(b)(4)(A) in April 1992, the Complaint was unsealed and served on the Defendant shortly thereafter, and on July 10, 1992, the United States filed its Amended Complaint for Money Damages and Civil Penalties Under the False Claims Act, 31 U.S.C. §§ 3729–33, and Common Law (Doc. # 10) (hereinafter Amended Complaint).

On December 16, 1992, the Court stayed civil discovery in the action indefinitely, and directed the United States to file a status report every sixty days, *in camera,* detailing the progress of parallel criminal proceedings. While the stay was in effect, a criminal investigation was conducted into the circumstances from which the civil action arose. Simultaneously therewith, attorneys with the United States Department of Justice, Civil Division, conducted an independent investigation with which Defendant BCBSF cooperated. During the pendency of the investigations, BCBSF produced hundreds of thousands of documents and years of computer history data. At the conclusion of the civil investigation,[1] a Settlement Agreement was reached between the United States and BCBSF.

In pertinent part, the Settlement Agreement releases BCBSF from all liability to the United States under the FCA, various other statutes, and various common law causes of action, arising out of its participation in the Medicare Part B Program as the Florida Medicare Carrier, and more specifically out of the transactions or occurrences alleged in the Complaint or the Amended Complaint dating from December 1, 1986, through July

---

1. The United States elected not to seek criminal charges against BCBSF.

9, 1992. In consideration of this release and upon the dismissal with prejudice of this action, BCBSF agrees to pay to the United States the sum of $10,000,000. In accordance with the Settlement Agreement, the United States' Motion to Dismiss (Doc. # 66) was filed on August 5, 1993. Two weeks later, the instant Motion to Intervene was filed.

In his motion, Mr. Cooper states that he brought suit against BCBSF under the *qui tam* provisions of the FCA on August 17, 1990, alleging it violated the FCA in its capacity as the Florida Medicare Part B carrier *and* in its capacity as administrator of private employer group health plans. His claims, however, focused on actions BCBSF allegedly took in violation of its contractual and statutory duties to process certain Medicare and private insurance claims in such a way that the private insurance policies paid on a "primary" basis, and Medicare paid only on a less expensive "secondary" basis. In other words, private insurance policies were to cover the bulk of the cost of certain claims, and Medicare would pay the amount still owing after private insurance coverage was exhausted. According to Mr. Cooper's Complaint, BCBSF fraudulently manipulated its procedures, both as a Medicare carrier and as an administrator of private insurance plans, so that Medicare paid on a primary basis, and private insurance companies, including BCBSF, paid only on a secondary basis. For convenience, these alleged violations shall hereinafter be referred to as secondary payor violations.

Allegations similar to those made by Mr. Cooper are also made in the Amended Complaint in this case. *See id.*, ¶ 23 & ¶ 28. However, the Amended Complaint is not limited to secondary payor violations, but alleges other violations of the FCA as well, among other things. The Settlement Agreement would release BCBSF from liability for all such violations of the FCA, including the secondary payor violations, committed by BCBSF in its capacity as Medicare Part B carrier for the state of Florida. Hence, the

Settlement Agreement, if approved,[2] would render moot Mr. Cooper's suit to the extent he seeks to hold BCBSF liable for secondary payor violations committed in that capacity. Accordingly, he seeks to intervene in this case to protect what he perceives to be his superior claim to the share of the settlement allotted to the *qui tam* plaintiff pursuant to 31 U.S.C. § 3730(d).

### Should Mr. Cooper be Permitted to Intervene?

Mr. Cooper's Motion to Intervene raises a conundrum. He claims that because he filed suit first, this lawsuit, to the extent it alleges secondary payor violations, is in violation of 31 U.S.C. § 3730(b)(5), which provides "[w]hen a person brings an action under this subsection, no person other than the Government may ... bring a related action based on the facts underlying the pending action." However, this section also provides that "no person other than the Government may intervene" in an action brought under the FCA. Because § 3730(b)(5) on its face admits of no exceptions to this rule, the Court could permit the intervention only by reading into this subsection an exception for situations like the instant one. *See* 31 U.S.C. § 3730(c)(5) (stating the Government may elect to pursue any alternative remedy to the one outlined in § 3730(b), *provided* that the person initiating the § 3730(b) action "shall have the same rights in such proceeding as such person would have had if the action had continued under this section.").

Even if Mr. Cooper could escape the bar to intervention contained in § 3730(b)(5), there remains the question of whether his motion satisfies the requirements of Rule 24, Federal Rules of Civil Procedure. In that regard, he seeks to intervene as a matter of right pursuant to Rule 24(a)(2), and, in the alternative, he seeks permission to intervene pursuant to Rule 24(b)(2).

### A. Intervention as of Right

A party seeking to intervene as of right under Rule 24(a)(2) must show that: (1)

---

2. The United States' Motion for Court Approval of Settlement Notwithstanding Objections of Relator (Doc. # 87), filed on October 5, 1993, is still pending before this Court. *See* 31 U.S.C. § 3730(c)(2)(B).

his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit. If he establishes each of the four requirements, the district court must allow him to intervene.

*Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir.1989) (citation omitted). The current parties contend Mr. Cooper's Motion for Intervention should be denied because he has no real interest in this lawsuit, and because his motion is untimely.

▮ An individual entitled to intervene as of right under Rule 24(a)(2) is one with a direct, substantial and legally protectible interest in the subject matter of the action. *Chiles,* 865 F.2d at 1213. It is contended Mr. Cooper has no such interest since his lawsuit, which was filed in the Southern District of Florida, was dismissed by the Honorable Shelby Highsmith, United States District Judge, in August 1992. BCBSF contends this dismissal is binding on Mr. Cooper unless and until it is set aside by the Eleventh Circuit, before which an appeal is pending.

The Court agrees with the parties. The effect of the dismissal of his suit with prejudice is to preclude Mr. Cooper from further litigating the claims made therein in a different lawsuit. *See Lawlor v. National Screen Serv.,* 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955); *Kaspar Wire Works, Inc. v. Leco Engineering & Mach.,* 575 F.2d 530, 534 (5th Cir.1978).[3] Judge Highsmith's dismissal remains *res judicata,* moreover, pending a decision on the appeal. *Jaffree v. Wallace,* 837 F.2d 1461, 1467 (11th Cir.1988) (per curiam). Therefore, unless and until the Eleventh Circuit says otherwise, Mr. Cooper is bound by Judge Highsmith's ruling that he has no claim under the FCA. That being so, he has no legally protectible interest in these proceedings.

▮ Even if he should ultimately prevail on appeal, Mr. Cooper's intervention is not warranted for the additional reason that it is untimely. As stated in *Chiles:*

In determining whether [a] motion to intervene [is] timely, [the Court] must consider the length of time during which the [movant] knew or reasonably should have known of [his] interest in the case before moving to intervene, the extent of prejudice to the existing parties as a result of the [movant's] failure to move for intervention as soon as [he] knew or reasonably should have known of [his] interest, the extent of prejudice to the [movant] if [his] motion is denied, and the existence of unusual circumstances militating either for or against a determination that [the] motion [is] timely.

865 F.2d at 1213. In this case, counsel for Mr. Cooper frankly admitted that his previous counsel, Luis C. Bustamante, Esq., had conversations with attorneys involved in this case about this case long before the settlement was disclosed, including attorneys with the United States Department of Justice. Indeed, counsel for the United States represents:

Shortly after the United States intervened in this case, Luis Bustamante, Esq., who was then counsel for Herbert Cooper, contacted the Department of Justice to discuss the Government's intervention in this case. Mr. Bustamante indicated that he had read the Complaint filed in this action and was concerned about the extent to which the allegations overlapped with allegations that he had made in the action he filed more than six months earlier.

United States' Opposition at 3. Counsel for Mr. Cooper did not dispute this representation at the hearing, but merely stated he was of the impression the secondary payor violations constituted a minor portion of Ms. Burr's Complaint.

The secondary payor violations alleged in the original Complaint herein clearly overlap with those alleged in Mr. Cooper's Complaint. *Compare* Complaint for Money Dam-

---

**3.** The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

ages and Civil Penalties Under the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* (Doc. # 1), filed on February 19, 1991 (hereinafter Relator's Complaint), ¶ 30.d.i. *with* Motion to Intervene, Exhibit A, ¶ 23 through ¶ 25. Accordingly, if Mr. Bustamante did indeed read the Relator's Complaint shortly after it was unsealed, he would have known of Mr. Cooper's interest in this case since that time. Even if he had not, the fact he was aware of this lawsuit since that time demonstrates, at a minimum, he was on inquiry notice of the subject matter of the instant action. Finally, current counsel for Mr. Cooper has admitted he had prior knowledge that secondary payor violations were alleged in this case. Whether they were a "minor" portion of Ms. Burr's Complaint is immaterial. Hence, Mr. Cooper, through his counsel, knew or reasonably should have known of his interest in this case approximately sixteen months before he attempted to intervene.

The prejudice to the parties of Mr. Cooper's delay, moreover, is substantial. The United States conducted an investigation which spanned several months and involved the review of literally hundreds of thousands of documents. BCBSF produced many of these materials, and then negotiated a Settlement Agreement with the United States which would dispose of the case in its entirety. Only after these considerable efforts have been expended does Mr. Cooper belatedly seek to assert some interest in this case. It is true the Relator has her own objections to the settlement, but she and the settling parties are preparing for a hearing on the fairness of that settlement. Allowing Mr. Cooper to intervene at this stage would inject a whole new set of issues in what is already a complex case. Litigating those issues almost certainly would delay the hearing on the Settlement Agreement and the Relator's objections thereto.

Balanced against this tangible prejudice to the existing parties is the bare chance the Eleventh Circuit *might* reverse Judge Highsmith and revive Mr. Cooper's moribund lawsuit. Unless and until that happens, Mr. Cooper has no interest in this case that could be prejudiced by denying intervention. The parties to this lawsuit, on the other hand, have diligently pursued their respective interests, and are entitled to a timely resolution of their respective legal rights. Accordingly, it is concluded Mr. Cooper is not entitled to intervene in this action as a matter of right.

### B. Permissive Intervention

A party seeking to intervene under Rule 24(b)(2) must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common. The district court has the discretion to deny intervention even if both of those requirements are met. . . .

*Chiles,* 865 F.2d at 1213.

▮ As outlined above, Mr. Cooper's intervention is untimely. Even if it were not, the Court would exercise its discretion to deny intervention for the reasons already stated. Therefore, because the Court finds the proposed intervention is unwarranted under both Rule 24(a)(2) and 24(b)(2), Mr. Cooper's Motion for Intervention (Doc. # 68) is **DENIED.**

**DONE AND ORDERED.**