UNITED STATES OF AMERICA, ex rel. William St. John LACORTE, Plaintiff,

v.

ROCHE BIOMEDICAL LABORATORIES, INC., Defendant.

UNITED STATES ex rel. Andrew A. HENDRICKS, et al., Plaintiffs,

v.

ROCHE BIOMEDICAL LABORATORIES, INC., Defendant.

Nos. 2:96CV00417, 2:96CV01024.

United States District Court, M.D. North Carolina, Greensboro Division.

Aug. 21, 1998.

Gill P. Beck, Robert H. Edmunds, Jr., Greensboro, NC, Nyda B. Zelenka, New Orleans, LA, for plaintiff.

Wade Marvin Smith, Raleigh, NC, Ira H. Raphaelson, Washington, DC, David P. King, Baltimore, MD, David A. Senter, Daniel W. Fouts, Greensboro, NC, for defendant.

## MEMORANDUM OPINION

TILLEY, District Judge.

This case is before the Court on a Motion to Intervene [Doc. # 40 in 2:96CV00417] filed by Ms. Ramona Wagner and Ms. Jeanine Dehner (the "Relators").[1] The United States, on the other hand, has filed a Motion for Entry of Order of Dismissal [Doc. # 69 in 2:96CV00417; Doc. # 37 in 2:96CV01024]. For the reasons stated below, the Relators' Motion to Intervene is GRANTED and the United States' Motion is DENIED.

---

1. The Motion to Intervene was filed only in first case listed in the caption, but the two cases have since been consolidated by a January 29, 1997 Order entered by Magistrate Judge Sharp.

## I.

The history of this matter is as follows: the Relators are both former billing clerks for Allied Clinical Laboratories, Inc. ("Allied") in Cincinnati, Ohio. On February 7, 1994, in the United States District Court for the Southern District of Ohio, the Relators filed a qui tam action alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.,* and several state law violations. The United States intervened in the Ohio case in July of 1994, and the case was then settled and dismissed with prejudice on March 20, 1995. On that date, the United States, the Relators, and Allied jointly executed a Settlement Agreement and Release ("Settlement I") concerning the alleged violations of the FCA. (*See* Mot. Intervene Ex. 1.) Settlement I noted that the United States and Allied had entered a separate Corporate Integrity Agreement ("CIA"), in which Allied was required to submit periodic reports concerning its potential wrongdoing to the United States. (*See id.* ¶ J; *id.* Ex. 2.) Also on that date, the Relators and Allied executed a separate Confidential Settlement Agreement and Mutual Release ("Settlement II"). (*See* Def.'s Mem. Resp. Mot. Intervene Ex. B (under seal).)

Since the dismissal of the Ohio case, Allied and at least two other medical laboratories, Roche Biomedical Laboratories ("Roche") and National Health Laboratories ("NHL"), have merged with Laboratory Corporation of America ("LabCorp"), which is headquartered in Burlington, North Carolina. All of these laboratories have faced charges that they violated the FCA.

On November 21, 1996, the United States, LabCorp, Roche, NHL, Allied, two relators who filed qui tam actions against Roche, and two relators who filed qui tam actions against NHL, all executed a Settlement Agreement and Release ("Global Settlement") concerning claims asserted by the United States against Roche, NHL, and Allied. (*See* App. United States' Post–Hr'g Mem.) Some portion of the claims settled in the Global Settlement may have grown out of disclosures made pursuant to the Ohio CIA. (*See id.* Ex. 20, ¶¶ V–Z.)

The Relators filed their Motion to Intervene approximately two weeks after the Global Settlement was made public. At a hearing held on February 19, 1998, the Relators made clear that their claim in this case pertains only to that portion of the Global Settlement, if any, which arose from disclosures made pursuant to the CIA. (*See* Tr. 2/19/98 Hr'g at 6–7, 37–38.)

## II.

There are two considerations in determining whether the Relators should be allowed into this case. The first is whether the FCA bars them from intervening. If it does not, the second consideration is whether the Federal Rules of Civil Procedure either require or allow intervention in this case. The Relators' Motion should be granted because the FCA allows and the Rules of Civil Procedure require that the Relators be allowed to intervene.

### A. Applicability of the False Claim Act's Bar on Intervention

In construing a statute, a court should first determine whether "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). If the language is unambiguous and the overall statutory scheme is coherent and consistent, the inquiry ends. *See id.* If the language is ambiguous, a court should look to the broader context and purpose of the statute to help ascertain the particular language's meaning. *See id.,* 519 U.S. 337, 117 S.Ct. at 848.

The FCA as it applies to this case cannot be properly interpreted without reference to its overall purpose. The statute contains only one provision which directly addresses intervention:

> When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

31 U.S.C. § 3730(b)(5). On its own, this provision might be read to unambiguously

prevent a grant of the Relator's Motion in this case. "[W]ith regard to the particular dispute in th[is] case," *Robinson*, 519 U.S. 337, 117 S.Ct. at 846, however, another section of the FCA is inconsistent with such a reading of § 3730(b)(5). The portion of the FCA which describes the rights of relators whose qui tam actions have been taken over by the Government reads in relevant part:

Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

*Id.* § 3730(c)(5). Subsection (c)(5) appears to grant relators an unconditional right to participate in "any alternate remedy" pursued by the Government. "Any alternate remedy" should be given as broad a construction as the phrase would naturally receive. The phrase is not ambiguous, nor does its typically broad construction conflict with the FCA's overall scheme.

The particular facts of this case illustrate the conflict between these two subsections. If, as the Relators argue, some portion of the Global Settlement is attributable to the information on which they based the Ohio case or information arising from the Ohio case *and* they are otherwise entitled to some fraction of the relevant portion, subsection (c)(5) would seem to allow them to intervene, while subsection (b)(5) would seem to prevent their intervention. *See United States ex rel. Burr v. Blue Cross and Blue Shield of Florida, Inc.,* 153 F.R.D. 172, 174 (M.D.Fla.1994) (recognizing potential of subsection (c)(5) to create exception to subsection (b)(5)). This inconsistency makes the meaning of the statute ambiguous and therefore requires an examination of the statute's overall purpose and scheme.

The subsections at issue became a part of the FCA when it was amended by the False Claims Amendment Act, Pub.L. No. 99–562, 100 Stat. 3153 (1986). The legislative history of these particular subsections suggests that Congress did not consider situations like the one presented by this case when drafting either of these provisions. According to the Senate Report on the False Claims Amendment Act, subsection (b)(5) was meant to "clarify ... that private enforcement under the civil False Claims Act is not meant to produce class actions or multiple separate suits based on identical facts and circumstances." S.Rep. No. 99–345, at 25 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5290. Neither this Report nor any of the remarks made on the floor reflect any recognition of the possibility of a case such as this one, in which the Relators are seeking to intervene in a suit which they claim is effectively a revival of their own. Similarly, the Senate Report's discussion of what is now subsection (c)(5) focuses primarily on preserving a relator's rights if the Government chooses to pursue an administrative civil penalty proceeding rather than a lawsuit. *Id.* at 27, 1986 U.S.C.C.A.N. at 5292. The floor remarks concerning this subsection also contain no references to a situation like that presented in this case. *See, e.g.,* 132 Cong. Rec. 29,321 (1986) (statement of Rep. Glickman).

Given this lack of guidance concerning the specific provisions at issue, the next step is to consider the FCA's overall purpose. Fortunately, the legislative history provides much more help here. The False Claims Amendments Act was designed to make the FCA "a more useful tool against fraud in modern times." S.Rep. No. 99–345 at 25, 1986 U.S.C.C.A.N. at 5266. The Senate Report explains that one purpose of the bill was "to encourage any individual knowing of Government fraud to bring that information forward." *Id.* at 2, 1986 U.S.C.C.A.N. at 5266–67. The Judiciary Committee believed that "only a coordinated effort of both the Government and the citizenry will decrease th[e] wave of defrauding public funds," and it noted the function of the bill's increased rewards to private citizens in encouraging individuals' participation in the effort to reduce fraud. *Id.* at 2, 1986 U.S.C.C.A.N. at 5267. *See also* 132 Cong.Rec. 29,322 (1986) ("This is precisely what the law is intended to do: deputize

ready and able people who have active knowledge of fraud against the government to play an active and constructive role through their counsel to bring to justice those contractors who overcharge the government."); 132 Cong.Rec. 28,580 (1986) (statement of Sen. Grassley) ("Primary in ... this legislation is the concept of private citizen assistance in guarding taxpayer dollars.")

Construing the FCA to prevent the Relators from intervening in this case would contradict Congress' clearly expressed purpose of encouraging citizens to report fraud by awarding them some portion of any recovery obtained by the Government's based on their reports. If citizens felt that the Government could intervene in a qui tam case, dismiss the case, and then seek a settlement from the defendant without including the relator(s) in the settlement discussions, their incentive to report fraud would be undercut. Although there is no allegation that this case has proceeded along the lines just described, the mere possibility of such a progression suggests that Congress would not have meant for subsections (b)(5) and (c)(5) to be interpreted to prevent the Relators from intervening here.

When viewed in its entirety, then, the FCA should not be construed to prevent the Relators from intervening in this case. Section 3730(b)(5)'s bar on intervention should not be construed as absolute, but as preventing intervention by parties unrelated to the original claim from joining a suit. *See United States ex rel. Precision Co. v. Koch Indus., Inc.,* 31 F.3d 1015, 1018–19 (10th Cir.1994); *United States ex rel. Sanders v. East Alabama Healthcare Auth.,* 953 F.Supp. 1404, 1408 (M.D.Ala.1996). Under the particular facts of this case, the Relators have the right to enter the case to determine if some portion of the Global Settlement constitutes an "alternate remedy" under § 3730(c)(5).

## B. Intervention Under Rule 24

The FCA is only the first potential hurdle to intervention in this case. Since it does not bar the Relators from intervening, the analy-. sis moves to the usual question in cases which a third party wishes to join—whether

the Federal Rules of Civil Procedure allow the requested intervention. In this case, the Rules allow the Relators to intervene as a matter of right.

■ Rule 24 of the Federal Rules of Civil Procedure governs intervention. It allows intervention of right:

upon timely application ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2). The Fourth Circuit requires an applicant for intervention of right to demonstrate: "(1) an interest in the subject matter of the action; (2) that the protection of the interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Teague v. Bakker,* 931 F.2d 259, 260–61 (4th Cir. 1991). A court should test an application to intervene by the same liberal standards used when ruling on a motion to dismiss. *See* 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1914, at 418 (2d ed.1986).

In this case, the Relators' filing of their Motion to Intervene approximately two weeks after the public announcement of the settlement was clearly timely. Also, there is no question that the Relator's protection of any interest that they might have in the Global Settlement would be impaired if this case is dismissed, nor is there any question that their interest is not adequately represented by existing parties. The only question, then, is whether the Relators have "an interest in the subject matter of the action."

■ An interest sufficient under Rule 24(a) is one which is "significantly protectable." *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971); *Teague,* 931 F.2d at 261. Although various circuit courts have used different definitions of a significantly protectable interest, the Supreme Court has not provided any further explanation of this term. *See Dia-*

*mond v. Charles,* 476 U.S. 54, 68 n. 21, 106 S.Ct. 1697, 1707 n. 21, 90 L.Ed.2d 48 (1986). In this circuit, however, *Teague's* holding that an intervenor whose interest was contingent on the outcome of other litigation had a significantly protectable interest, 931 F.2d at 261, suggests that this standard may be satisfied by a showing of the mere possibility of a valid claim or defense.

In general, courts have been especially likely to conclude that a significantly protectable interest does not have to be definitively established at the time of an application to intervene in cases in which the would-be intervenors have a readily identifiable interest in property. *See* 7C Wright et al., § 1908, at 272. Several recent cases illustrate how these factors combine. In *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.,* 72 F.3d 361 (3d Cir.1995), the court allowed third party condominium owners to intervene in a dispute between a condominium owners' association and a builder, even though their interest in the funds held in escrow by the district court as a result of the original dispute was contingent on the outcome of another case. *Id.* at 368. In *Purnell v. City of Akron,* 925 F.2d 941 (6th Cir.1991), the court allowed parties who claimed an interest in the money damages sought in a wrongful death case to intervene even though it might later have been determined that they had no standing in the case. *Id.* at 948. Finally, in a case in which the would-be intervenors claimed an ownership interest in various trademarks, the D.C. Circuit granted an application for intervention despite a lack of precedent supporting their claim of ownership and the possibility that their claim was not ripe. *See Williams & Humbert Ltd. v. W & H Trade Marks (Jersey) Ltd.,* 840 F.2d 72, 75 (D.C.Cir.1988).

■ These authorities all support the conclusion that the Relators have a significantly protectable interest in a portion of the Global Settlement sufficient to allow them to intervene. The Relators claim an interest in the portion of the Global Settlement attributable to the CIA that resulted from their Ohio case. Their interest is much like the one found sufficient in *Mountain Top Condomin-*

*ium Association,* in that it is an interest in the very funds that are at issue in the cases in which they are attempting to intervene. *See* 72 F.3d at 368.

The primary arguments made by the United States and the other relators in these cases in opposition to the Relators' Motion have addressed issues which the Court is currently unable to resolve. For example, the other parties have argued that the Relators waived any rights they might have in the Global Settlement when they executed Settlements I and II. The record now before the Court shows that Settlements I and II constituted waivers of some of the Relators' rights, but it is not possible to determine the exact or the intended scope of those waivers from the current record. None of the parties have briefed important aspects of this question, such as the applicable law for interpreting Settlements I and II, whether any ambiguity in the documents is created by Settlement II's requirement that Allied notify the Relators of "any lawsuit by or proposed settlement with the United States which involves conduct that (1) predates this agreement; and (2) specifically relates to the practices described in paragraphs H through K," (Def.'s Mem. Resp. Mot. Intervene Ex. B ¶ 10 (filed under seal).), or, if the documents are ambiguous, whether and in what form the parol evidence rule applies.

Similarly, there is a question about whether § 3730(e)(4), the "original source" provision of the qui tam statute, bars the Relators from recovery of or instead entitles them to any portion of the Global Settlement attributable to the CIA. On the current record, it is impossible to determine whether the reports mandated by CIA were ever the subject of a "public disclosure" necessary to trigger this subsection. Even if the reports were publicly disclosed, the Relators have at least a cognizable legal claim that they were an "original source" of the information and are therefore entitled to a portion of any recovery connected with their initial disclosure. *See United States ex rel. Siller v. Becton Dickinson & Co.,* 21 F.3d 1339, 1351 (4th Cir.1994) (holding that § 3730(e)(4) "requires only that the relator have direct and independent knowledge of the information un-

derlying the allegations of a false claim and voluntarily provide the information to the government before filing his qui tam action"); *United States v. Northrop Corp.*, 5 F.3d 407, 411 (9th Cir.1993) (holding that an original source must "play[ ] some part, whether direct or indirect, in the public disclosure of the allegations that are the subject of the [action]").[2]

It is true that a determination adverse to the Relators on the issue of the releases would deprive them of standing, while an adverse determination under subsection (e)(4) would deprive the Court of jurisdiction to hear their claim. At this stage of the proceedings, however, it cannot be determined as a matter of law that the Relators have no interest in a portion of the Global Settlement. Therefore, they have a "significantly protectable" interest and should be allowed to intervene of right.

### III.

The FCA does not bar the Relators from intervening in this case, and Rule 24(a) requires that they be allowed to intervene of right. This ruling necessarily means that the Relators are "parties who have appeared in the action" for the purposes of Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure.[3] The United States' Motion for Entry of Order of Dismissal thus cannot be granted because the Stipulation of Dismissal has not been signed by all parties who have appeared in the action. Therefore, the Relators' Motion to Intervene [Doc. # 40 in 2:96CV00417] is GRANTED and the United States' Motion for Entry of Order of Dismissal [Doc. # 69 in 2:96CV00417; Doc. # 37 in 2:96CV01024] is DENIED.

### ORDER

For the reasons given in the Memorandum Opinion filed contemporaneously with this Order, IT IS ORDERED:

1. Ms. Ramona Wagner and Ms. Jeanine Dehner's Motion to Intervene [Doc. # 40 in 2:96CV00417] is GRANTED.

2. The United States' Motion for Entry of Order of Dismissal [Doc. # 69 in 2:96CV00417; Doc. # 37 in 2:96CV01024] is DENIED.

---

2. During the February 19, 1998 hearing, counsel for the United States argued that the facts in this case barred any recovery under § 3730 for the Relators, but he admitted that, given a different set of facts, it was legally possible for the Relators to recover. (*See* Tr. 2/19/98 Hr'g at 25–26, 30.)

3. Rule 41(a)(1)(ii) provides in relevant part, "an action may be dismissed by the plaintiff without order of the court ... (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action."