NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0497n.06
Filed: June 10, 2005

No. 04-5761

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WANDA L. BOGGESS, Administratrix of the Estate of Chad Boggess, deceased, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| CHASTITY BOGGESS; JOYCE BOGGESS; THADDEOUS BOGGESS, | ) ) ) | |
| Proposed Intervenors-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| BOB PRICE, Deputy; MATT DANIELS, Deputy; DOUGLAS RAYBOURN; BOB STEVENS, Jailer, Boyd County, Kentucky; BOYD COUNTY DETENTION CENTER; BOYD COUNTY, KENTUCKY; ASHLAND HOSPITAL CORPORATION; MARTY JOHNSON; BOYD COUNTY EMERGENCY AMBULANCE SERVICE, INC., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellants. | ) | |

Before: COLE and SUTTON, Circuit Judges; ZATKOFF, District Judge.[*]

SUTTON, Circuit Judge. Chastity, Joyce and Thaddeous Boggess appeal the district court's

denial of their motion to intervene in Wanda Boggess's § 1983 and state wrongful death claims,

_____

[*]The Honorable Lawrence P. Zatkoff, Senior United States District Judge for the Eastern
District of Michigan, sitting by designation.

which she filed on behalf of her husband Chad Boggess's estate against several defendants allegedly liable for assaulting him while he was being held in the custody of Kentucky authorities. Concluding that any interest the proposed intervenors may have in the lawsuit will be adequately represented by the current parties and will not be impeded by continuation of the litigation with the parties as they now stand, we affirm the district court's denial of their motion for mandatory intervention.

I.

On March 16, 2002, according to the amended complaint in this case, Chad Boggess was seriously injured in an altercation with officers at the Boyd County (Kentucky) Detention Center, where he had been incarcerated for the previous five days. The lawsuit alleges that Emergency Ambulance Service technicians continued to beat Chad while they transported him to a Kentucky hospital, where he slipped into a coma and died in April 2002. In January 2003, one of the defendants, Deputy Bob Price, pleaded guilty to criminal charges stemming from the incident.

Chad Boggess's widow, Wanda Boggess, was appointed to administer his estate and, in April of 2002, filed a lawsuit, individually and as the administratrix of Chad's estate, against jail officials and Boyd County, alleging violations of § 1983 and West Virginia's wrongful death statute, W. Va. Code § 55-7-6. Initially, the action was filed in the Southern District of West Virginia, where Chad resided and all of his relatives reside, but that court found venue improper and transferred the case to the Eastern District of Kentucky. In May 2002, after the venue transfer, Wanda filed an amended

complaint—which added ambulance and hospital officials as defendants—re-alleging her § 1983

claim, alleging wrongful death under Kentucky's wrongful death statute, Ky. Rev. Stat. § 411.130,

and abandoning her wrongful death claim under West Virginia law.  In the amended complaint,

Wanda sought damages arising from her and her children's loss of Chad's "services and society."

JA 75, 81.

In February 2004, Chastity Boggess (Chad's sister), Joyce Boggess (Chad's mother) and

Thaddeous Boggess (Chad's father) (the "proposed intervenors") filed a motion to intervene in the

lawsuit.  They contended that Wanda had "made known her hostilities toward any and all claims that

[the proposed intervenors] have as a result of [Chad's] death . . . and had refused to present an

argument to the legal tribunals regarding any right that Chad's family may have to recover in this

action."  JA 89.

Under the Kentucky and West Virginia wrongful death statutes, a wrongful death claim is

brought on behalf of the decedent's estate by a personal representative. Ky. Rev. Stat. § 411.130(1);

W. Va. Code § 55-7-6(a).  Both statutes also include language establishing how to allocate any

awarded damages among family members.  When the decedent is survived by a widow and children,

as in this case, Kentucky's wrongful death statute does not allocate any damages to the decedent's

siblings or parents; rather, half of the damages goes to the widow and half goes to the children.  Ky.

Rev. Stat. § 411.130(2) ("The amount recovered, less funeral expenses and the cost of administration

and costs of recovery including attorney fees, not included in the recovery from the defendant, shall

be for the benefit of and go to the kindred of the deceased in the following order: . . . (b) If the

deceased leaves a widow and children or a husband and children, then one-half . . . to the widow or husband and the other one-half . . . to the children of the deceased."). West Virginia's statute, on the other hand, potentially includes the decedent's siblings and parents in the distribution of any wrongful death damages. W. Va. Code § 55-7-6(b) ("In every such action for wrongful death, the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, may direct in what proportions the damages shall be distributed to the surviving spouse and children, including adopted children and stepchildren, brothers, *sisters*, *parents* and any persons who were financially dependent upon the decedent at the time of his or her death or would otherwise be equitably entitled to share in such distribution.") (emphasis added).

All of the defendants in this case live in Kentucky or are located there. Chad Boggess was arrested in Kentucky, received his injuries in Kentucky and died in Kentucky. Wanda and the proposed intervenors all reside in West Virginia, as did Chad, at least until he was jailed in Kentucky five days before the altercation.

The district court ruled that because the proposed intervenors would not receive any damages under Kentucky's wrongful death statute, they had no interest in the litigation and thus could not intervene. D. Ct. Op. (May 4, 2004) at 5–6. In considering a subsequently filed motion for reconsideration, the district court also concluded that under Kentucky's applicable choice-of-law rules, Kentucky law, not West Virginia law, applied to the wrongful death claim. D. Ct. Op. (May 24, 2004) at 3–4.

II.

Aside from the question whether a motion to intervene was filed on a timely basis (which is not at issue here), we give de novo review to a district court's mandatory intervention determination. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 471 (6th Cir. 2000). This court applies a three-part test to determine whether timely motions for mandatory intervention under Rule 24(a) of the Federal Rules of Civil Procedure should be granted: "(1) does the applicant claim an interest relating to the property or transaction that is the subject of the action; (2) is the applicant so situated that disposition of the lawsuit may as a practical matter impair or impede his ability to protect that interest; and (3) is the applicant's interest adequately represented by existing parties[?]" *Purnell v. City of Akron*, 925 F.2d 941, 945 (6th Cir. 1991); *cf. Stupak-Thrall*, 226 F.3d at 471 (including timeliness as an additional requirement, but one which is reviewed for abuse of discretion); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997) (same). An applicant must satisfy all three prongs to intervene. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

Our decision in *Purnell* elaborates on the meaning of these three requirements. According to the complaint in that case, police officers used excessive force against Armstead Land, the injuries from which caused his death. Land allegedly had fathered some children with Evelyn Campbell and some children with Barbara Land, his wife. All of the Campbell children sought to intervene in a lawsuit claiming (1) a violation of Land's constitutional rights under § 1983 and (2) a wrongful death under Ohio's wrongful-death statute, Ohio Rev. Code § 2125.01.

As to the § 1983 claim, the court held that the Campbell children's interest, if any, would not be impaired by the lawsuit. If the defendants were found liable, the court reasoned, the total damages awarded would not be based on any deprivation of familial relationships but on the decedent's personal losses. Indeed, the claim sought damages "only for a violation of *Mr. Land's* constitutional rights, specifically *his* first, fourth and fourteenth amendment rights," *Purnell*, 925 F.2d at 948, which adhered to Sixth Circuit precedent providing that § 1983 "provides a cause of action which is *personal* to the injured party," *id*. at 949 n.6.

As to the Ohio wrongful death claim, the court held that the Campbell children's potential interest would be impeded by the litigation and would not be adequately represented. The court noted that the Ohio wrongful death statute allowed damages for the suffering of the decedent's surviving children, among other relatives, including loss of support and the children's mental anguish. *Id*. at 949. Assuming that the Campbell children would be able to prove paternity, the court held that their interest would be impaired by litigation that resulted in total damages excluding the Campbell children's losses:

> Admittedly, if we affirmed the lower court's denial of intervention, the Campbell children may not be entirely without recourse. We recognize that Ohio law normally requires the court which appointed the administrator to distribute the proceeds recovered in a wrongful death action. . . . Assuming the Campbells eventually proved paternity and so notified the administrator, they may be able to intervene in the probate court's distribution of the proceeds recovered in district court. Alternatively, the Campbells could successfully sue the administrator for breach of fiduciary duty if he had already distributed the proceeds. However, even assuming they are viable, such options, for obvious reasons, do not provide adequate protection. If the Campbells are not allowed to intervene in district court, the amount of proceeds will have been limited to the proof presented by the Land family; yet the proceeds would

have to be shared by both the Lands and the Campbells. On the other hand, if the administrator has already distributed the proceeds he may not be worth suing.

*Id.* (citations omitted).

Turning to the third prong of the test, the court held that the damages issue also meant that the Campbell children's interest would not be adequately represented by the current parties:

> [The administrator] argues that the interests of the present representative and the proposed intervenor are identical as both would want to obtain a maximum recovery for the benefit of the *estate*. . . . But again, [the administrator] misperceives the object of the Campbells' motion. They wish to sue, through their personal representative, for *personal* recovery. The Campbells concede that the administrator will adequately represent their interests in the section 1983 action. As noted elsewhere, however, the interests of the Lands and the Campbells are not identical under the Ohio wrongful death statute. Although the children of both families are suing to recover the same type of damages, the amount of damages will differ for each child. Accordingly, the two sets of children are in competition in the sense that both want full recovery from what may be limited damages.

*Id.* at 950.

**Section 1983 claim.** In this case, as in *Purnell*, Chad allegedly died at the hands of his jailers and medical professionals, and other family members (Chastity, Joyce and Thaddeous) seek to intervene in a lawsuit alleging (1) a violation of his constitutional rights under § 1983 and (2) wrongful death under the Kentucky wrongful death statute, Ky. Rev. Stat. § 411.130. And as in *Purnell*, the § 1983 claim would not provide damages for the suffering of the other family members, here Chad's sister and parents. As this court has previously explained, a § 1983 claim is a personal right of action brought only on behalf of the individual whose rights have been violated:

> A survival claim is predicated upon the decedent's claim for damages sustained during his lifetime. On the other hand, a wrongful death action creates a new and separate claim or cause of action for the damages sustained by decedent's estate as a result of his death. The distinction as it arises in conjunction with alleged § 1983 violations is apparent. The § 1983 cause of action, by virtue of the explicit language of the section itself, is a personal action cognizable only by the party whose civil rights had been violated; while, on the other hand, the wrongful death action is a cause of action that inures to the benefit of decedent's estate, as a result of, not the personal injury suffered by the *decedent*, but rather, injuries to his estate caused by his wrongful death. This court has consistently distinguished these separate causes of action in *Jones v. Wittenberg University*, 534 F.2d 1203 (6th Cir. 1976), and *Hall v. Wooten*, 506 F.2d 564 (6th Cir. 1974), interpreting Ohio and Kentucky law, respectively.

*Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984). As *Purnell* and *Jaco* make clear, the proposed intervenors' potential interest in the § 1983 action—i.e., their fair share of the total damages awarded—would not be impeded by this litigation, which seeks only to establish liability and to award total damages. *See Purnell*, 925 F.2d at 948.

Just as significantly, Wanda, as administratrix, has both a duty and a personal interest to seek the maximum damages available in the § 1983 action—under a damages calculation that cannot take into account the proposed intervenors' personal losses. *Compare id*. at 949. Under these circumstances and under *Purnell*, Wanda adequately represents the proposed intervenors' interest in the § 1983 claim, and they accordingly have no right to intervene under Rule 24(a).

**Wrongful death claim.** But that is where this case and *Purnell* diverge. Unlike Ohio's wrongful death statute, Kentucky's wrongful death statute does not provide damages to siblings and parents when, as here, the decedent is survived by a widow and children. In such a case, the widow

and children each receive half of the total damages. Ky. Rev. Stat. § 411.130(2)(b). As the proposed intervenors therefore concede, if Kentucky law applies to the wrongful death claim in terms of liability, damages and the distribution of damages, they do not have an interest at all in the claim, let alone an interest impeded by the litigation or inadequately represented by the parties.

Does, then, Kentucky law apply to the wrongful death claim? We believe that it does and that the district court was correct in so holding. "A federal court exercising supplemental jurisdiction is bound to apply the law of the forum state, including its choice of law rules." *Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998). As the district court noted, "'[w]hen [a Kentucky] court has jurisdiction of the parties its primary responsibility is to follow its own substantive law. The basic law is the law of the forum, which should not be displaced without valid reason.'" D. Ct. Op. (May 24, 2004) at 2 (quoting *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972)). As Kentucky law sees it, "[t]he 'conflicts question should not be determined on the basis of a *weighing* of interests' . . . 'but simply on the basis of whether Kentucky has *enough* contacts to justify applying Kentucky law.'" *Adam v. J.B. Hunt Transport, Inc.*, 130 F.3d 219, 230 (6th Cir. 1997) (quoting *Arnett v. Thompson*, 433 S.W.2d 109, 113 (Ky. 1968)). And, indeed, Kentucky courts have "'held the fact that [an] accident occurred in Kentucky, was, standing alone, enough contact to justify the application of the law of Kentucky.'" *Adam*, 130 F.3d at 231 (quoting *Foster*, 484 S.W.2d at 829).

Measured by these choice-of-law rules, Kentucky law plainly applies to this case. Chad was injured in Kentucky, was incarcerated in Kentucky, was hospitalized in Kentucky and ultimately

died in Kentucky. These contacts with the home state more than suffice to apply Kentucky law to the wrongful death claim, even though Chad resided in West Virginia and even though Wanda and the proposed intervenors reside there as well.

Against this precedential backdrop, the proposed intervenors correctly conceded at oral argument that Kentucky law controlled two inquiries raised by this lawsuit—the defendants' wrongful death liability and damages arising from that liability—claiming not to "care if Kentucky law applies to liability and damages." They contend, however, that Kentucky would apply West Virginia law to the *distribution* of those damages, because all of the potential beneficiaries live in West Virginia. In support of this argument, they point to several district court and state court cases that distinguished (1) the choice-of-law question regarding liability (and damages) and (2) the choice-of-law question regarding the distribution of damages and that indeed applied a different state's law to each inquiry. *See Walters v. Rockwell Int'l Corp.*, 559 F. Supp. 47 (E.D. Va. 1983); *Soares v. McClosky*, 466 F. Supp. 703 (E.D. Pa. 1979); *Shenandoah v. City of Philadelphia*, 438 F. Supp. 981 (E.D. Pa. 1976); *Satchwill v. Vollrath Co.*, 293 F. Supp. 533 (E.D. Wisc. 1968); *In re Estate of Caccamo*, 336 N.Y.S.2d 77 (N.Y. Surr. Ct. 1972).

But even if these cases properly bifurcated the choice-of-law analysis, which we need not consider today, the fact remains that Kentucky law applies to the liability and damages determinations in this case. And that is enough to ensure that the proposed intervenors' interest is adequately represented and will not be impeded, at least until a court actually reaches the issue of distribution. As *Purnell* noted, the proposed intervenors "may be able to intervene in the probate

court's distribution of the proceeds recovered in district court. Alternatively, [they] could successfully sue the administrat[rix (Wanda)] for breach of fiduciary duty if [she] had already distributed the proceeds." 925 F.2d at 949. The legal factor that made these options inadequate in *Purnell*—the potential reduction in *total* damages if the Campbell children's losses were not represented—is conspicuously missing here. Kentucky law does not permit the proposed intervenors' personal damages to inform the calculation of *total* damages for which the defendants could be liable, and accordingly the proposed intervenors need not take part in the current litigation to preserve their potential right to distribution of those damages. If necessary, they may instead fight for their share of the total damages when and where those damages are distributed. *See Jones v. Prince George's County*, 348 F.3d 1014, 1019 (D.C. Cir. 2003) (holding that family members could not intervene in state wrongful death claim because another family member, acting as administratrix, would adequately represent the proposed intervenors' interests).

In the end, we thus need not determine whether Kentucky would apply West Virginia law or Kentucky law to the distribution of any damages awarded in this case, because the proposed intervenors' potential interest is adequately represented and will not be impeded by allowing the district court to determine liability and total damages without their participation. The proposed intervenors may be able to intervene in the subsequent distribution of any damages awarded, and may indeed successfully establish before an appropriate probate or state court that West Virginia law should apply to the distribution. But we need not decide that issue to determine whether they have a right to intervene in this case. Indeed, we note that unlike damages applicable to the § 1983 claim,

which apparently would be distributed in the appropriate probate or state court, *see Purnell*, 925 F.2d at 948, any damages recovered under Kentucky's wrongful death statute apparently would not pass through the decedent's estate, *see Rhodes v. Rhodes*, 764 S. W.2d 641, 643 (Ky. Ct. App. 1988), and may be distributed directly to the proper recipients by the trial court itself, *see Bays v. Cox's Adm'r*, 229 S.W.2d 737, 740 (reversing the trial court's distribution of damages under the wrongful death statute). If the district court finds itself in the position to preside over the distribution of any wrongful death damages awarded in this case, it should not consider a motion to intervene in that distribution barred by this opinion.

One final point: the proposed intervenors contend that the district court did not separately consider the § 1983 claim in its choice-of-law analysis. They argue that under federal choice-of-law rules applicable to this federal-law claim, West Virginia law would apply to the distribution of any damages. But, as *Purnell* makes clear, even if the proposed intervenors have a claim to the distribution of § 1983 damages, the total damages, determined by federal law, do not include the proposed intervenors' personal losses. All of which again means that the proposed intervenors cannot satisfy the second or third prongs for mandatory intervention in *this* case. *See Purnell*, 925 F.2d at 948, 949.

## III.

For these reasons, we affirm the district court's denial of the motion for mandatory intervention.